IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION


ALLEN SCOTT PILLOW                                         PETITIONER


v.                        NO. 4:22-cv-00713-JM-PSH


BUREAU OF PRISONS                                          RESPONDENT


ORDER


The record reflects that petitioner Allen Scott Pillow ("Pillow") pleaded guilty in the United States District Court for the Eastern District of Arkansas to one count of Theft of Government Funds. See United States v. Pillow, 4:19-cr-00612-LPR. He was sentenced to twenty-four months of imprisonment and two years of supervised release. He then entered the custody of the Federal Bureau of Prisons ("BOP").

On August 10, 2022, Pillow began the case at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2241. He maintained in the petition that respondent BOP is miscalculating his First Step Act ("FSA") earned time credits. He asked that the BOP be ordered to immediately re-

calculate the credits because he was then being housed at the City of Faith

Residential Reentry Center; his home confinement eligibility date was

September 11, 2022; and his release date was November 22, 2022. See

Docket Entry 1 at CM/ECF 7.

Pillow expected the BOP to oppose his petition on the basis of his

failure to exhaust his administrative remedies, so he addressed that issue.

He gave the following reasons why his failure to exhaust should be excused:

> First, I was told by Leavenworth Staff that my remaining FSA
> Credit would be awarded upon my release from prison to the
> halfway house. Based on that I saw no need at that time to file
> any grievance.
>
> Second, I am now housed at a halfway house and am not able
> to file through the grievance process.

See Docket Entry 1 at CM/ECF 10.

In a letter dated September 12, 2022, Pillow provided notice that his

address had changed. He was no longer being housed at the City of Faith

Residential Reentry Center in Little Rock, Arkansas, but was residing at

what appeared to be a residence in Paragould, Arkansas.

On September 21, 2022, the BOP filed a response to the petition and

asked that the petition be dismissed for two reasons. First, Pillow failed to

exhaust his administrative remedies. Second, he has now obtained the

relief he seeks in his petition because his FSA earned time credits have been re-calculated. The BOP supported the latter reason with several exhibits and the following representations:

> Pillow asserts his release date should be November 22, 2022. Pillow was at USP Leavenworth from June 7, 2021, to June 1, 2022, when he transferred to the City of Faith Residential Reentry Center. ... On September 12, 2022, Pillow was transferred from the City of Faith Residential Reentry Center in Little Rock to Home Confinement, where he was to serve the remainder of his prison sentence. ...

> While preparing its response, the BOP reviewed Pillow's Earned Time Credit calculations and determined that under the interim procedures for calculating FSA time credits, Pillow was owed 14 more time credits that he initially had. This was corrected, and Pillow's revised FSA Release Date is now November 8, 2022. ...

See Docket Entry 6 at CM/ECF 6.

Pillow filed a reply on September 26, 2022, and admitted that he did not exhaust his administrative remedies. He asked that his failure to do so be excused for the reasons he previously gave. He also asked that his failure to do so be excused because his release date is roughly five weeks away.[1]

---

[1]     Pillow supported that assertion by citing the Court to Stewart v. Snider, No. 1:22-cv-00294-MHH-JHE, 2022 WL 2032305 (N.D.Ala. May 10, 2022), report and recommendation adopted, 1:22-cv-00294-MHH, 2022 WL 2019965 (N.D.Ala. June 6, 2022), a case in which the exhaustion requirement was excused, in part, because of the petitioner's impending release date.

With regard to the BOP's re-calculation of Pillow's FSA earned time credits, he noted that the re-calculation changed his home confinement eligibility date to August 28, 2022, which caused him to remain at the City of Faith Residential Reentry Center fifteen days longer than he should have. He asked that the credits be re-calculated a second time, with the hope that his release date will be moved up from November 8, 2022, and he can begin serving his two years of supervised release.

In light of the fact that Pillow's release date is now scheduled for November 8, 2022, or roughly five weeks away, the Court is not inclined to recommend that his petition be dismissed because he failed to exhaust his administrative remedies. See Tensley v. Outlaw, No. 2:10-cv-00014-BD, 2010 WL 2671782 (E.D.Ark. July 2, 2010) (given time limitations, initiating grievance process would be futile). What, then, should happen next?

This case is complicated in at least two respects. First, the Court cannot tell from the current record whether the BOP's re-calculation of Pillow's FSA earned time credits is correct. The BOP takes the position that the re-calculation is correct, but the BOP's affirmative evidence is not a model of clarity. Pillow, in turn, is skeptical that the re-calculation is correct, but he has failed to offer affirmative evidence to support his skepticism and/or opposing position.

Second, Pillow will remain in BOP custody, at most, until November 8, 2022. After that, he will be released from BOP custody, and it is highly unlikely that the BOP can be ordered to re-calculate his FSA earned time credits, if he is indeed owed more credits, as he will be supervised by a probation officer. See Parish v. Marques, No. 19-cv-1038-NEB-TNL, 2019 WL 5654047 (D.Minn. Sept. 13, 2019), report and recommendation adopted, No. 19-cv-1038-NEB, 2019 WL 5624485 (D.Minn. Oct. 31, 2019).[2]

---

[2]     In Parish v. Marques, United States District Judge Nancy E. Brasel adopted the report and recommendation of United States Magistrate Judge Tony N. Leung and found the following:

> ... supervised release "does not commence until an individual is released from imprisonment." United States v. Johnson, 529 U.S. 53, 57 (2000) (quotation omitted). "A term of supervised release comes after imprisonment, once the prisoner is released by the [BOP] to the supervision of a probation officer. Supervised release does not run while an individual remains in the custody of the [BOP]." Id. (quotation omitted); see 18 U.S.C. 3624(e) ...

> Thus, Petitioner's supervised release begins after he is released from the prison term he is serving in BOP custody. 18 U.S.C. 3624(e); Johnson, 529 U.S. at 57-58. Accordingly, while Petitioner may not be physically confined in a prison, Petitioner's prerelease RRC placement is part of his prison term, not his supervised release. Once Petitioner has been released by the BOP from his prison term, he will begin his supervised release, and his probation officer will administer his supervised release in accordance with the conditions set by the sentencing court. See 18 U.S.C. 3624(e) ("A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the [BOP] to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court.").

See Id., 2019 WL 5654047, 5.

Were this case to proceed in the typical fashion, it is improbable that it could conclude before November 8, 2022.[3] In order to expedite this case, a short hearing will be conducted on one issue: whether the BOP's re-calculation of Pillow's FSA earned time credits is correct.[4] A hearing will be scheduled by separate order.

DATED this 29th day of September, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

---

[3]   Because the record appears to be incomplete, the undersigned would ordinarily direct the parties to file additional materials, e.g., affidavits, in support of their positions. The undersigned would then review the materials and make a report and recommendation to United States District Judge James M. Moody, Jr. The parties would be given a period of time within which to object to the report and recommendation. At the close of that period, Judge Moody would review the report and recommendation, and any objections, and issue a final order in this case.

[4]   It would also expedite the resolution of this case were the parties to consent to proceed before a Magistrate Judge, but the decision to do so rests entirely with the parties.