IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ALLEN SCOTT PILLOW                                          PETITIONER

v.                           NO. 4:22-cv-00713 PSH

BUREAU OF PRISONS                                          RESPONDENT

MEMORANDUM OPINION AND ORDER

INTRODUCTION. In this case, filed pursuant to 28 U.S.C. 2241, petitioner Allen Scott Pillow ("Pillow") maintains that respondent Bureau of Prisons ("BOP") has failed to award him the proper number of First Step Act earned time credits ("FSA credits"). For the reasons that follow, his petition is granted in one respect.

BACKGROUND. Pillow began this case on August 10, 2022, by filing a petition in which he challenged the BOP's calculation of his FSA credits. He asked that the credits be immediately re-calculated because he was being housed at the City of Faith ("City of Faith"), a halfway house/residential reentry center; his projected home confinement date was September 11, 2022; and his projected release date was November 22, 2022.

On September 21, 2022, the BOP filed a response to the petition and asked that the petition be dismissed for two reasons. First, Pillow failed to exhaust his administrative remedies. Second, he has now obtained the relief he seeks because his FSA credits have been re-calculated. The BOP supported the latter reason with several exhibits and the following representations:

> Pillow asserts his release date should be November 22, 2022. Pillow was at USP Leavenworth from June 7, 2021, to June 1, 2022, when he transferred to the City of Faith Residential Reentry Center. ... On September 12, 2022, Pillow was transferred from the City of Faith Residential Reentry Center in Little Rock to Home Confinement, where he was to serve the remainder of his prison sentence. ...
>
> While preparing its response, the BOP reviewed Pillow's Earned Time Credit calculations and determined that under the interim procedures for calculating FSA time credits, Pillow was owed 14 more time credits that he initially had. This was corrected, and Pillow's revised FSA Release Date is now November 8, 2022. ...

See Docket Entry 6 at CM/ECF 6.

Pillow filed a reply on September 26, 2022, and admitted that he did not exhaust his administrative remedies. He asked that his failure to do so be excused, in part, because his projected release date was approximately six weeks away and having to exhaust at this late date would be futile.

With regard to the BOP's re-calculation of Pillow's FSA credits, he noted that the re-calculation had changed his home confinement date to August 28, 2022, and caused him to have remained at the City of Faith for an additional fifteen days. He asked that the credits be re-calculated a second time as he believed he was entitled to even more credits.

The Court could not determine from the record whether the BOP's re-calculation of Pillow's FSA credits was proper, so an evidentiary hearing was scheduled for October 13, 2022. Prior to the hearing, the BOP filed a supplemental response and joined it with a declaration from Susan Giddings ("Giddings"), Chief of the Unit Management Section of the BOP's Correctional Programs Branch.[1] In the declaration, Giddings explained how the re-calculation of Pillow's credits was made and represented that he is not entitled to any additional credits. In fact, she represented that he had benefitted from a windfall and had been awarded too many credits. It was in her declaration that the Court learned for the first time about the BOP having previously calculated the credits manually but doing so now by means of an auto-calculation application. It was also in her declaration that the Court learned for the first time of the following:

---

[1]   The BOP later filed an amended supplemental response in which the BOP attached the exhibits to Giddings' declaration that were inadvertently not included with her first declaration. See Docket Entry 14.

> ... with the launching of the auto-calculation application, eligible inmates will be able to earn FSA Time Credits toward their early release and transfer to Supervised Release only until they reach the statutory maximum of 365 earned FSA Time Credits or until the accumulation of earned FSA Time Credits results in a projected release date that is within 18 months of the day of posting of the credits, whichever occurs first. This 18-month cut off is necessitated by the need for a predictable release date. As an inmate's projected release approaches, his release date cannot be a moving target because BOP requires time to effectively engage the inmate in prerelease preparation planning, which includes transfer to community-based residential program to facilitate transition back into the community.

See Docket Entry 11, Exhibit 1 at CM/ECF 6.

Pillow quickly filed a reply to the BOP's supplemental response. In the reply, he acknowledged that he had been awarded an additional fourteen days of FSA credits, resulting in him having been awarded a total of one hundred days credit. He maintained that he was still owed seventy-eight days of credits. It was his position that had he been awarded the additional credits, his release date would have been August 22, 2022.

The Court has now conducted the evidentiary hearing in this case.[2] On the basis of the record, and the evidence and argument offered during the hearing, the Court finds that Pillow is entitled to some relief.

---

[2] At the conclusion of the evidentiary hearing, the parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(c).

THE FSA. The FSA was enacted into law on December 21, 2018, and provides an incentive for a prisoner's participation in evidence-based recidivism reduction programming, such as classes and productive activities. See Stewart v. Snider, No. 1:22-cv-00294-MHH-JHE, 2022 WL 2032305 (N.D.Ala. May 10, 2022), report and recommendation adopted, 1:22-cv-00294-MHH, 2022 WL 2019965 (N.D.Ala. June 6, 2022). The FSA enables a prisoner to acquire time credits, which are applied toward his pre-release custody or supervised release. See 18 U.S.C. 3632(d)(4)(C). The prisoner earns ten days of time credits for every thirty days he successfully participates in approved recidivism reduction programming. See 18 U.S.C. 3632(d)(4)(A)(i). A prisoner determined to be at a "minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." See 18 U.S.C. 3632(d)(4)(A)(ii).

The implementation of the FSA, and the calculation and awarding of earned time credits, proved to be somewhat of a challenge. Giddings represented that the calculation and awarding of the credits involved, in part, the following:

On January 13, 2022, the Department of Justice announced that BOP had finalized the FSA Time Credit rule ("FSA Final Rule") and transmitted it to the Federal Register for publication. The final rule was published on January 19, 2022. This final rule explains BOP procedures regarding implementation of the specific provisions, including those related to the earning and application of FSA Time Credits.

On January 12, 2022, BOP established interim procedures to ensure timely implementation of the FSA Final Rule. Interim procedures were established to prioritize inmates for immediate benefit—in the form of release or pre-release community placement—from application of FSA Time Credits. Under the interim procedures, BOP is performing manual calculations of FSA Time Credits for these inmates, who are within 24 months of their projected release date.

The interim procedures remained in effect until August 31, 2022, at which time the BOP launched its auto-calculation application. This application fully automates the calculation of FSA Time Credits so that manual calculation of credit is no longer required.

Under the interim procedures, BOP manually calculated an initial award of FSA Time Credits earned for each inmate in a given "batch." On December 25, 2021, the first "batch" data set was extracted, and the time credits for inmates within that batch were calculated. Batch data was available monthly and was extracted on the last Saturday of the last full week of the month. Each batch was based on the inmate's current projected release date. In other words, the BOP prioritized inmates with imminent projected release dates and were thus expected to immediately benefit from the application of FSA Time Credits to their sentences.

...

>Under the interim procedures, once an inmate's FSA Time Credits were calculated manually, the earned credits--up to the statutory maximum of 365--were posted to the inmate's record creating an earlier projected release date for transfer to Supervised Release. After the manual calculation is complete for a given inmate, BOP did not post additional FSA Time Credits, which could further adjust the projected release date, to that inmate's record until the auto-calculation application was implemented.
>
>...
>
>With the launching of the auto-calculation application all inmates are being reviewed, and FSA Time Credits are being applied to the inmate records consistent with the FSA Final Rule's language and implementing procedures. However, release dates will be fixed under the more generous interim procedures for any inmate who fell into one of the "priority" monthly batches and whose projected release date is less than 18 months away at the time the auto-calculation application was launched. In other words, this subset of inmates will not have their manually calculated FSA Time Credits and projected release dates adjusted by the auto-calculation application.

See Docket Entry 11, Exhibit 1 at CM/ECF 3-6.

FACTS. The facts of this case are not in dispute. They are as follows:

1. Pillow pleaded guilty in the United States District Court for the Eastern District of Arkansas to one count of Theft of Government Funds. See United States v. Pillow, 4:19-cr-00612-LPR.

2. He was sentenced to twenty-four months of imprisonment and two years of supervised release.

3. He entered the custody of the BOP and began serving his sentence at USP Leavenworth on June 7, 2021.

4. Because Pillow entered BOP custody within twenty-four months of his projected release date, he was eligible for immediate benefit under the interim procedures.

5. The BOP granted him "presumed participation" credits and awarded him eighty-six days of FSA credits for the period from June 7, 2021, through December 25, 2021, i.e., the date the "batch" data set that included him was extracted.

6. Although his participation credits were "presumed," the BOP does not dispute his assertion that during the period from June 7, 2021, through December 25, 2021, he actually earned FSA credits because he actively participated in approved recidivism reduction programming and was at a low risk for recidivating.

7. When Pillow learned that he would be transferred to the City of Faith on June 1, 2022, he inquired about the award of FSA credits for the period from December 26, 2021, through June 1, 2022.

8. It was his understanding at the time that he had acquired additional days of FSA credits for the period from December 26, 2021, through June 1, 2022, and he would be receiving the credits for those days.

9. On June 1, 2022, Pillow was transferred to the City of Faith.

10. Upon his arrival at the City of Faith, he learned that he would not receive any FSA credits for the period from December 26, 2021, through June 1, 2022, but that he would remain at the City of Faith until September 11, 2022, and his projected release date was November 22, 2022.

11. On September 8, 2022, the BOP's Correctional Programs Branch issued a memorandum providing guidance regarding the launch of the auto-calculation application; the memorandum provided, in part, the following with respect to the application of FSA credits to a prisoner's sentence:

> Eligible inmates will continue to earn FTC toward early release until they have accumulated 365 days OR are 18 months from their release date, whichever happens first. At this point, the release date becomes fixed, and all additional FTCs are applied toward RRC/HC placement.

See Docket Entry 16, Exhibit 1 at CM/ECF 2.

12. Pillow took a few, minor steps administratively to resolve his dispute with the BOP, but he eventually filed the case at bar.

13. On September 12, 2022, he was transferred to home confinement.

14. After the commencement of this case, the BOP awarded him an additional fourteen days of FSA credits for the period from June 7, 2021, through December 25, 2021.

15. The additional FSA credits caused his home confinement date to change from September 11, 2022, to August 28, 2022, the result of which was that he remained at the City of Faith fifteen days too long.

16. The additional FSA credits also caused his projected release date to change from November 22, 2022, to November 8, 2022.

17. The BOP refused, though, to award Pillow any FSA credits for the period from December 26, 2021, through June 1, 2022.

18. The BOP refused to do so even though it does not dispute his assertion that he actually earned FSA credits for the period from December 26, 2021, through June 1, 2022.

19. It was, and continues to be, the BOP's position that with the implementation of its auto-calculation application, a prisoner cannot accumulate FSA credits which result in a projected release date within eighteen months of the date the credits are posted.

20. The BOP took, and continues to take, the position that Pillow cannot be awarded FSA credits for the period from December 26, 2021, through June 1, 2022, because his projected release date, i.e., November 8, 2022, is within eighteen months of the date the credits were posted.³

---

³ Although Giddings' declaration is not a model of clarity, she appears to represent that Pillow's FSA credits were posted on January 20, 2022. See Docket Entry 11, Exhibit 1 at CM/ECF 8.

21. Specifically, the BOP's position, as evidenced in Giddings' declaration, was as follows:

> ... By the time the rules language was published and the Bureau began awarding the credit to inmates, the inmate was 13 months from release. The interim procedures did not consider the two assessment periods, the setting of release date (18-month from release), nor the "opt in" status.
>
> Had the full rules language and implement text been in place rather than the more generous interim procedures the inmate would have been too short to get the days applied to an early release date (due to being within 18 months), but he would be able to apply the days to early pre-release placement.

See Docket Entry 11, Exhibit 1 at CM/ECF 7.

EXHAUSTION. The BOP asks that this case be dismissed because Pillow failed to exhaust his administrative remedies. Without question, he failed to exhaust his remedies. Having weighed the competing interests, though, this case will not be dismissed because he failed to do so. His projected release date is now November 8, 2022, or approximately two weeks away. It would be futile to require him to exhaust at this late date. See Tensley v. Outlaw, No. 2:10-cv-00014-BD, 2010 WL 2671782 (E.D.Ark. July 2, 2010) (given time limitations, initiating grievance process would be futile). See also Lueth v. Beach, 498 F.3d 795, 797 n.3 (8th Cir. 2007), cert. denied, 552 U.S. 1121 (2008).

11

ANALYSIS. The Attorney General, through the BOP, is charged with computing federal sentencing credits. See Henderson v. Outlaw, No. 2:10-cv-00088-JLH-BD, 2010 WL 5574730 (E.D.Ark. Dec. 15, 2010), report and recommendation adopted, No. 2:10-cv-00088-JLH, 2011 WL 109551 (E.D.Ark. Jan. 13, 2011). "The Court reviews the BOP's decisions for abuse of the agency's 'substantial discretion.'" See Id, 2010 WL 5574730, 1 (quoting Fegans v. United States, 506 F.3d 1101, 1105 (8th Cir. 2007)).

The case at bar is unlike any of the cases cited by the parties and is unlike any of the cases the Court has found in conducting its own research. Those cases typically involve prisoners who were serving long sentences, see e.g., Mills v. Starr, No. 21-cv-1335-SRN-BRT, 2022 WL 4084178 (D.Minn. August 17, 2022), report and recommendation adopted, No. 21-cv-1335-SRN, 2022 WL 4080750 (D.Minn. Sept. 6, 2022); who were, for any number of reasons, ineligible for FSA credits; see e.g., Parrish v. Young, No. 5:21-cv-000426-FWV, 2022 WL 2818946 (S.D.W.Va. July 19, 2022), Rand v. Fikes, No. 21-cv-1276-JRT, 2021 WL 5567900 (D.Minn. Nov. 29, 2021); whose cases solely encompassed periods prior to the BOP's auto-calculation application becoming operational, see e.g., Steward v. Snider, supra; or whose cases otherwise solely encompassed periods prior to the BOP's September 8, 2022, memorandum.

Here, Pillow is serving a relatively short sentence. He was eligible for, and did in fact earn, FSA credits during his incarceration. The credits were initially calculated pursuant to the interim procedures, then were calculated pursuant to the auto-calculation application when it became operational on August 31, 2022. He was awarded credits for the period from June 7, 2021, through December 25, 2021, but received no credits for the period from December 26, 2021, through June 1, 2022. On September 8, 2022, the BOP issued its memorandum. He is now on home confinement, and his projected release date is approximately two weeks away.

The Court has very little guidance in resolving the issue presented in this case, i.e., whether the BOP has abused its discretion by the manner in which it is applying Pillow's FSA credits. In some respects, the Court is sailing into unchartered waters in resolving the issue.

The Court fully understands the BOP's need to establish a prisoner's projected release date well in advance of his actual release. The BOP must have adequate time to prepare for his transfer to a residential reentry center and supervised release. As Giddings represents, the BOP must have adequate time to "effectively engage the inmate in prerelease preparation planning." A moving projected release date would undoubtedly make such planning difficult.

In an apparent attempt to prevent a moving projected release date, the BOP adopted its "eighteen month" policy with respect to FSA credits, a policy set forth in the BOP's September 8, 2022, memorandum and attested to by Giddings.[4] The Court takes no position on whether it is within the BOP's discretion to adopt such a policy, as the policy may well be within the BOP's discretion.

The troubling aspect of this case involves the manner in which the BOP is applying the "eighteen month" policy to Pillow's sentence, specifically, that the BOP has failed to credit his sentence for the FSA credits he earned from December 26, 2021, through June 1, 2022. For the reasons that follow, the Court finds that the BOP has abused its discretion by the manner in which it is administering his sentence.

---

[4] In the September 8, 2022, memorandum, the "eighteen month" policy was set forth as follows:

> Eligible inmates will continue to earn FTC toward early release until they have accumulate 365 days OR are 18 months from their release date, whichever happens first. At this point, the release date becomes fixed, and all additional FTCs are applied toward RRC/HC placement.

In Giddings' declaration, she outlined the "eighteen month" policy as follows:

> ... eligible inmates will be able to earn FSA Time Credits toward their early release and transfer to Supervised Release only until they reach the statutory maximum of 365 earned FSA Time Credits or until the accumulation of earned FSA Time Credits results in a projected release date that is within 18 months of the day of posting of the credits, whichever occurs first.

First, the FSA provides that a prisoner "shall" earn time credits at a rate of fifteen days for every thirty days of successful participation in evidence-based recidivism programming if he meets certain criteria. See 18 U.S.C. 3632(d)(4)(A). The BOP does not dispute that Pillow met the criteria and earned FSA credits for the period from December 26, 2021, through June 1, 2022. The BOP has failed, though, to give him any benefit for those credits. Pillow earned credits for that period, and "they should be awarded to him and reflected in his sentence." See Steward v. Snider, 2022 WL 2032305, 7.

Second, the BOP's September 8 memorandum provides, in part, that an eligible prisoner will earn FSA credits toward his early release until, as relevant here, he is within eighteen months of his release date. "At that point," all additional credits are applied to his residential reentry center/home confinement placement, which is consistent with 18 U.S.C. 3632(d)(4)(C). In this case, though, the credits Pillow earned for the period from December 26, 2021, through June 1, 2022, or within eighteen months of his release date, do not appear to have been applied to his residential reentry center/home confinement placement. Those placement dates were determined solely on the basis of the credits he earned for the period from June 7, 2021, through December 25, 2022.

Third, the BOP maintains that had its auto-calculation application been operational when Pillow first entered the BOP's custody, he would have only earned sixty FSA credits for the period from June 7, 2021, through December 25, 2021, and zero credits for the period from December 26, 2021, through June 1, 2022. It is unclear how that can be because it is contrary to the clear intent of the FSA and the "eighteen month" policy as outlined in the BOP's September 8, 2022, memorandum. At a minimum, the credits Pillow earned for the period from December 26, 2021, through June 1, 2022, should be applied to his residential reentry center/home confinement placement.

Fourth, as a corollary, it appears that the BOP has not given Pillow the benefit of the FSA credits he earned for the period from June 7, 2021, through December 25, 2022, because the BOP believes he has benefitted from a windfall and has been awarded too many credits. There are at least two problems with that position. If fault is to be assigned, it lies with the BOP, and it would be inequitable to punish Pillow for the windfall. Moreover, the windfall was only for the period from June 7, 2011, through December 25, 2021. The windfall has no impact on whether he actually earned credits during, and should be awarded credits for, the period from December 26, 2021, through June 1, 2022.

Accordingly, Pillow is entitled to have the FSA credits he earned for the period from December 26, 2021, through June 1, 2022, applied to his sentence. How the credits are applied is typically left to the BOP's discretion, see 18 U.S.C. 3632(d)(4)(C), but given that he is now on home detention, they can only be applied to his transfer to supervised release

Pillow cites Dyer v. Fulgam, No. 1:21-cv-299-CLC, 2022 WL 1598249 (E.D.Tenn. May 20, 2022), for the proposition that FSA credits can be applied to a prisoner's actual term of supervised release.[5] Although Dyer v. Fulgam stands for that proposition, the Court will not follow Dyer v. Fulgam and will not order his additional credits be applied to his two years of supervised release. Once Pillow begins serving his supervised release, he is no longer in BOP custody, and the Court can no longer grant relief. See Alvarado-Ortiz v. FPC Yankton, No. 22-cv-206-NEB-ECW, 2022 WL 4358112 (D.Minn. July 27, 2022), report and recommendation adopted, No. 22-cv-206-NEB, 2022 WL 4357544 (D.Minn. Sept. 20, 2022). See also Zimmer v. Marske, No. 21-cv-284-JDP, 2022 WL 4016623 (W.D.Wis. Sept. 2, 2022) (court cannot use withheld FSA credits to reduce term of supervised release retroactively).

---

[5] In Dyer v. Fulgam, the prisoner had been released from BOP custody and had begun serving his term of supervised release. Thus, the facts of that case are dissimilar to the facts of this case.

CONCLUSION. The easy thing to do in this case would be to simply allow the clock to run out and allow Pillow to transfer out of the BOP's custody. The granting of relief will only benefit him by approximately two weeks, but the granting of relief the Court will order.

Pillow's petition is granted in the following one respect: the BOP is ordered to credit his sentence—specifically, the period of his home detention—for the FSA credits he earned for period from December 26, 2021, through June 1, 2022. Because those credits, by any measure, total more than the approximately two weeks he has remaining on home detention, the BOP shall immediately transfer him to supervised release. Judgment will be entered for Pillow in this one respect. In all other respects, his petition is denied.

IT IS SO ORDERED this 21st day of October, 2022.

_____
UNITED STATES MAGISTRATE JUDGE